No. 2013-1476

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**TRITON TECH OF TEXAS, LLC,**

**Plaintiff-Appellant,**

v.

**NINTENDO OF AMERICA INC.,**

**Defendant-Appellee**

---

**Appeal from the United States District Court for the Western District of Washington in case no. 13-CV-0157, Judge Richard A. Jones**

---

**BRIEF OF APPELLEE NINTENDO OF AMERICA INC.**

Grant Kinsel
Joseph Hamilton
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067
Phone: (310) 788-9900
GKinsel@perkinscoie.com

Dan L. Bagatell
PERKINS COIE LLP
2901 N. Central Ave. Suite 2000
Phoenix, Arizona 85012
Phone: (602) 351-8250
DBagatell@perkinscoie.com

Jonathan L. McFarland
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Phone: (206) 359-8000
JMcFarland@perkinscoie.com

December 9, 2013      *Attorneys for Appellee Nintendo of America Inc.*

## CERTIFICATE OF INTEREST

Counsel for defendant-appellee Nintendo of America Inc. certifies the following:

The full name of every party or amicus curiae represented by me is:

Nintendo of America Inc.

The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

n/a

All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Nintendo Co., Ltd.

The names of all law firms and the partners or associates that appeared for the party or amicus curiae now represented by me in the trial court or are expected to appear in this Court are listed below.

<u>PERKINS COIE LLP</u>

| Grant Kinsel | Joseph P. Hamilton | Dan L. Bagatell |
| Jonathan L. McFarland | Tyler Peterson | Michael J. Song |

<u>FINDLAY CRAFT, LLP</u>

Eric H. Findlay          Roger B. Craft

December 9, 2013          <u>/s/ Grant Kinsel</u>

Grant Kinsel

Counsel for Appellee

# TABLE OF CONTENTS

Table of Authorities ...................................................................................iv

Table of Abbreviations and Conventions ...............................................vi

Statement of Related Cases.................................................................... vii

Introduction ...............................................................................................1

Statement of Issues....................................................................................3

Statement of the Case................................................................................5

Statement of Facts .....................................................................................6

     A.    The '181 patent claims an input device that senses six degrees of motion ............................................................................6

     B.    The accused product is Nintendo's Wii remote combined with an accessory.................................................................10

     C.    The district court held the asserted claims invalid for indefiniteness because the specification did not describe particular structure corresponding to the claimed "integrator means" and "processing means" ......................................11

Summary of Argument ............................................................................13

Argument...................................................................................................16

I.    The district court properly declared the "integrator means" and "processing means" limitations indefinite because the specification failed to disclose sufficient corresponding structure ...................................16

     A.    A means-plus-function limitation is indefinite if the disclosed structure to perform the claimed function is merely a general-purpose processor, without further disclosure of an algorithm that the processor will perform...........................................................16

          1.    The knowledge of a person of ordinary skill does not remedy the failure to disclose an algorithm..............................17

2.    The obviousness of a means-plus-function limitation
does not remedy the failure to disclose an algorithm ..............21

B.    The '181 patent does not disclose an algorithm to perform the
claimed functions ...............................................................22

1.    The '181 patent does not disclose an algorithm to
perform the function of the "integrator means".......................23

2.    The '181 patent does not disclose an algorithm to
perform the function of the "processing means" ....................30

II.    The district court properly limited "communication means" to the
corresponding structures disclosed in the specification ...............................31

III.    The district court properly refused to import a "responsive to human
manipulation" limitation into the general term "input device" ...................36

Conclusion ........................................................................................38

Certificate of Compliance .....................................................................39

## TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007) ..........................................................37

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) ................................................*passim*

*Biomedino, LLC v. Waters Techs. Corp.*,
    490 F.3d 946 (Fed. Cir. 2007) ...........................................20, 21, 34

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009) ....................................................17, 30

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
    697 F.3d 1342 (Fed. Cir. 2012),
    *cert. denied*, 133 S. Ct. 2010 (2013) ..............................................23

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012)........................................................20

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
    673 F.3d 1361 (Fed. Cir. 2012) ...................................................17, 19

*Function Media, L.L.C. v. Google, Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013) .............................................18, 20, 21

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    336 U.S. 271 (1949),
    *adhered to on reh'g*, 339 U.S. 605 (1950)...................................37

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011) .....................................................21

*Ibormeith IP, LLC v. Mercedes-Benz USA, LLC*,
    No. 2013-1007 (Fed. Cir. Oct. 22, 2013).........................................19

## Cases (continued)

*McCarty v. Lehigh Val. R. Co.*,
  160 U.S. 110 (1895) ...................................................................... 37

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008) ................................................... 17

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................... 37

*Sage Prods., Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ................................................... 23

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
  659 F.3d 1376 (Fed. Cir. 2011) .............................................. 19, 20

## Statutes

35 U.S.C. § 103 ................................................................................ 21

35 U.S.C. § 112 ¶¶ 2, 6 ............................................................. *passim*

## TABLE OF ABBREVIATIONS AND CONVENTIONS

A-\_\_\_                    addendum of the plaintiff-appellant page

JA\_\_\_                    joint appendix page

Nintendo                defendant-appellee Nintendo of America Inc.

Triton                  plaintiff-appellant Triton Tech of Texas, LLC

'181 patent             U.S. Patent No. 5,181,181

'###(*xx*:*yy*-*zz*)    column *xx*, lines *yy* to *zz* of the '### patent

## STATEMENT OF RELATED CASES

Nintendo concurs with Triton's Statement of Related Cases.

# INTRODUCTION

Triton's '181 patent is invalid for indefiniteness because it improperly uses means-plus-function claim limitations to claim any means for performing the recited function. The asserted claims require an "integrator means" and a "processing means." But the only corresponding structure in the specification is "[a] conventional microprocessor with suitable programming that performs integration or a suitably programmed digital signal processor." The specification does not disclose any particular algorithm that would constitute "suitable programming" to perform the claimed functions.

As it did in the district court, Triton responds to the missing-algorithm problem by saying that no algorithm is necessary. In particular, Triton claims that the algorithm to perform integration was obvious, so the specification did not need to disclose it. But Triton cites no authority for that proposition, and it would effectively sweep away this Court's jurisprudence requiring disclosure of algorithms. This Court has consistently held that the *quid pro quo* for means-plus-function claiming is identification of specific structure performing the claimed function, and that where the structure performing the function is a general-purpose processor, the specification must disclose the structure of an algorithm that the processor is programmed to perform. Without disclosure of a particular algorithm, means-plus-function claiming becomes pure functional claiming, which the

Supreme Court long ago held is impermissibly indefinite. Triton essentially argues that it claims any and all ways of programming a microprocessor to perform integration. The district court correctly held that section 112 forbids that.

Recognizing this fundamental flaw, Triton argues for the first time that the specification actually discloses the required algorithm. Triton has forfeited this argument by failing to make it below, but in any event it has no merit. To make this argument, Triton stitches together odds and ends from the specification. But the cited portions of the specification simply restate the claimed functions without disclosing any particular algorithm to use to perform those functions. In the end, the required algorithm is still missing.

If this Court affirms the district court's holding that the asserted claims of the '181 patent are indefinite and therefore invalid, then it need not reach the other two issues that Triton raises on appeal. If the Court reaches the other two issues, however, it should affirm the district court's rulings on both scores.

First, Triton seeks a functional construction of "communication means" that would include any "uni-directional or bi-directional wireless interface" or "cable." But including all wireless and wired interfaces as Triton proposes would place no limit whatsoever on the structure corresponding to the claimed function, contrary to the rule against purely functional claiming. Instead, as the district court held, the claimed "communication means" must be limited to the structure actually

– 2 –

disclosed in the specification for performing the recited function, *i.e.*, six interface ports or a cable.

Second, Triton seeks to import a limitation from the specification to avoid invalidity. In particular, Triton asks this Court to limit the claimed "input device" to input devices "responsive to human manipulation." But as the district court properly ruled, nothing in the claim language imposes a human-manipulation requirement, and nothing in the specification or prosecution history imposes such a limitation, either.

The district court's judgment should be affirmed.

## STATEMENT OF ISSUES

1.     The asserted claims require an "integrator means" and a "processing means." The parties agreed that both were means-plus-function limitations. The specification discloses "[a] conventional microprocessor with suitable programming that performs integration or a suitably programmed digital signal processor." But the specification does not disclose any particular algorithm that would constitute "suitable programing" to perform the claimed functions. Triton argued below that the specification did not need to disclose an algorithm. Did the district court correctly reject that argument and hold the claims invalid for indefiniteness on grounds that the specification failed to disclose sufficient structure corresponding to the claimed functions?

2.    In the district court, Triton contended that the specification did not need to disclose an algorithm as supporting structure for the means-plus-function limitations, and, as a result, did not argue that any algorithm was disclosed. For the first time on appeal, Triton identifies portions of the specification as supposedly containing the required algorithm, but the specification portions Triton identifies parrot the recited functions, and do not disclose an actual algorithm. (A) Has Triton waived and forfeited its actual-disclosure argument?  (B) Even if not, are the asserted claims nevertheless invalid for indefiniteness because the specification failed to disclose a particular algorithm, as required to supply sufficient corresponding structure?

3.    The asserted claims also require a "communication means." The specification described six wireless interface ports or a single wired connection as the corresponding structure. Was the district court correct in limiting the "communication means" to those structures (and equivalents thereof) and not expanding it to include all wireless interfaces as Triton requested?

4.    Although the patent's written description describes a mouse and other input devices responsive to human manipulation, it did not purport to exclude other embodiments. Was the district court correct in refusing to import a "responsive to human manipulation" limitation from the specification into the claimed "input device for providing information to a computing device"?

## STATEMENT OF THE CASE

Triton originally filed its complaint against Nintendo and another defendant in the United States District Court for the Eastern District of Texas. As to Nintendo, Triton asserted that various Nintendo Wii system products infringed Triton's '181 patent. [JA253 (Docket); JA1002.] Triton ultimately accused Nintendo of infringing independent claims 4 and 19 and dependent claims 5, 13, 14, and 15.

Early in the case, Nintendo moved to transfer the case to the district court for the Western District of Washington. The Eastern Texas court did not immediately rule on Nintendo's motion, and in the meantime the parties proceeded to brief claim construction and related issues of indefiniteness. [JA263-66 (Docket).] Before holding a *Markman* hearing, the Eastern Texas court granted Nintendo's motion to transfer, agreeing with Nintendo that Triton "is an ephemeral entity and an artifice of this litigation." [JA1172.]

Shortly after the case was transferred from Eastern Texas to Western Washington, the Western Washington court asked the parties whether either party believed additional briefing on claim construction was necessary. Triton and Nintendo submitted a joint statement that neither party believed further claim construction briefing was necessary, as the pending briefs fully set forth their positions. [JA1179.] Based on that representation, the Western Washington court

proceeded to construe the claims and address Nintendo's arguments that the claims were indefinite.

Finding that the patent's written description did not disclose sufficient structure corresponding to the claimed "integrator means" and "processing means," the Western Washington court held that those terms were indefinite and that all the asserted claims were invalid under 35 U.S.C. § 112 ¶¶ 2 and 6 (now 35 U.S.C. § 112(b), (f)). [A-018.] For completeness, the court also construed the other disputed terms. [A-009 to -15.] The court then entered final judgment dismissing the case with prejudice. [A-022.] Triton appeals from that final judgment.

## STATEMENT OF FACTS

Triton's opening brief recites a variety of facts that are irrelevant to the issues on appeal. Triton also asserts supposed facts that go beyond the district court record in an attempt to cure the insufficient disclosure in the patent's specification. The relevant facts of record are as follows.

### A.    The '181 patent claims an input device that senses six degrees of motion

The '181 patent is directed to an "apparatus and method for inputting position, attitude and motion data to a computer." ['181(1:9-10).] Determining the "position, attitude and motion" includes sensing both linear movement and rotational movement of the input device. ['181(3:9-29).] As the specification acknowledges, such input devices were known in the prior art. ['181(2:13-27).]

The specification asserted, however, that the prior art had a number of shortcomings that the claimed invention purportedly overcame.

One purported shortcoming in the prior art was poor accuracy in computing rotational movement. ['181(2:25-32).] According to the patent, the computations used to determine rotational movement in the prior art required significant computing power and were therefore incompatible with lower-end computers. [*Id.*] The patent claimed to have overcome this shortcoming by using rotational rate sensors and relying on computations involving integration and application of correction values to compensate for "gravitational accelerations and tangential velocities." ['181(7:34-44).]

A second shortcoming that the '181 patent addressed was prior-art input devices' supposed ability to communicate wirelessly with computers only when the input devices and computers were aligned in certain orientations. ['181(2:39-42).] The '181 patent purported to overcome that alleged shortcoming by using six transceivers on the input device. ['181(5:16-19, 6:35-37).] With this structure, "regardless of the orientation of the mouse … with respect to the computer work station, at least one interface port will be directed generally at the computer." ['181(5:11-14).]

Figure 1(d) (highlighted below) depicted an exemplary input device showing three sides with a transceiver on each side:



Although wireless communication "allows for motion [of the input device] to be unencumbered by an attached cable" ['181(4:12-13)], the patent also disclosed wired communication via a cable connected between the input device and the computer, labeled 13 in Figure 1(d) ['181(5:23-25)].

Rather than reciting particular structures, the named inventors chose to claim their invention using the means-plus-function format. *See* 35 U.S.C. § 112 ¶ 6 (now 35 U.S.C. § 112(f)) ("An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."). Specifically, the claims recite an "integrator means" in claims 4, 5, 16, 19, 20, a "processing means" in claim 13, and a "communication means" in claims 4, 11, 19, and 20.

Claim 4 reads:

4.  An input device for providing information to a computing device, comprising:

a housing;

a first acceleration sensor provided in said housing for detecting acceleration along a first axis and producing analog electrical signals having values proportional to the detected acceleration;

a second acceleration sensor provided in said housing an oriented perpendicular to said first acceleration sensor for detecting acceleration along a second axis perpendicular to said first axis and producing analog electrical signals having values proportional to the detected acceleration;

a third acceleration sensor provided in said housing and oriented perpendicular to said first and second acceleration sensors for detecting acceleration along a third axis perpendicular to said first and second axes and producing analog electrical signals having values proportional to the detected acceleration;

a first rotational rate sensor provided in said housing for detecting rotation about said first axis;

a second rotational rate sensor provided in said housing for directly detecting rotation about said second axis;

a third rotational rate sensor provided in said housing for directly detecting rotation about said third axis;

an analog-to-digital converter associated with said input device which quantizes said analog acceleration sensor signals to produce digital acceleration sensor values;

> a first-in, first-out buffer memory which temporarily
> stores said digital acceleration sensor values from
> said analog-to-digital converter in sequential order
> for later processing;
>
> *integrator means associated with said input device for*
> *integrating said acceleration signals over time to*
> *produce velocity signals for linear translation*
> *along each of said first, second and third axes*; and
>
> *communication means associated with said input*
> *device for communicating information between*
> *said input device and said computing device.*

(Emphasis added.) Claim 13 reads:

> 13. The device of claim 4, further including
> *processing means for compensating for acceleration*
> *detected by said acceleration sensors attributable to*
> *gravitational acceleration forces*.

(Emphasis added.)

### B.   The accused product is Nintendo's Wii remote combined with an accessory

The accused product is a remote controller and a related accessory that can be used to control game-play on Nintendo's Wii video-game console. Specifically, the accused product is Nintendo's Wii Remote when used in combination with Nintendo's Wii MotionPlus accessory. [*See* JA188.] The Wii MotionPlus accessory attaches to the end of a Wii Remote. [*See id.*]

– 10 –

**C.    The district court held the asserted claims invalid for indefiniteness because the specification did not describe particular structure corresponding to the claimed "integrator means" and "processing means"**

The parties agreed that the "means" elements of the asserted claims are governed by section 112 paragraph 6. The parties also agreed to the claimed functions:

| Claim Term | Function |
|---|---|
| integrator means | integrating said acceleration signals over time to produce velocity signals for linear translation along each of said first, second and third axes (claims 4, 5, and 19) |
| | integrating said rotation signals and said linear translation velocity signals over time to produce position and attitude values (claim 19) |
| processing means | compensating for acceleration detected by said acceleration sensors attributable to gravitational acceleration forces (claim 13) |
| communication means | communicating information between said input device and said computing device (claims 4, 19) |

Both parties agreed that the only structure disclosed in the patent for performing the function of the claimed "integrator means" was "[a] conventional microprocessor with suitable programming that performs integration or a suitably programmed digital signal processor" [JA174-75, JA201-02] and, likewise that the only disclosed structure for performing the function of the claimed "processing means" was "[a] conventional microprocessor with suitable programming or a

suitably programmed digital signal processor" [JA177, JA201-02]. Nintendo argued that this disclosure was insufficient, rendering the limitations and the claims indefinite; Triton claimed that the disclosure was sufficient.

In particular, Nintendo explained that the "integrator means" and "processing means" limitations were indefinite as a matter of law because the '181 patent calls for "suitable programming" but fails to specify any actual algorithm that could perform the claimed functions. [JA201-03.] Triton responded that disclosure of an algorithm was not necessary because how to perform numerical integration would have been obvious to one skilled in the art. [JA214.] In support, Triton cited the portion of the '181 patent stating that the claimed functions can be implemented in a "known manner." [*Id.*] Triton thus asserted that the limitations covered *any* suitable programmed microprocessor so long as the microprocessor could perform the claimed function. Triton did not contend in the district court that the specification disclosed any particular algorithm.

The district court accepted the parties' stipulation regarding the functions of "integrator means" and "processing means." [A-016, A-018.] The court further agreed that the only corresponding structure disclosed in the patent was "a 'conventional microprocessor having a suitably programmed read-only memory' or a 'suitably programmed conventional digital signal processor.'" [A-016.] And it agreed with Nintendo that the "integrator means" and "processing means"

– 12 –

limitations were indefinite because the specification disclosed a general microprocessor without any associated algorithm. [A-014 to -18.] Because every asserted claim either directly included the indefinite "integrator means" limitation or depended from such a claim, the court held all the asserted claims invalid and dismissed the case with prejudice. [A-020 to -21.]

The district court also considered the parties' claim construction arguments regarding the claimed "communication means" and found that the corresponding structure disclosed by the specification was "six interface ports, one of which appears on each of the six surfaces of the claimed input device" or an "interface cable." [A-015.] In so doing, the district court rejected Triton's claim that the patent disclosed a generic "uni-directional or bi-directional wireless interface," finding that such a construction was only "an alternate phrasing of the claimed function" and did not provide any structure. [A-016.]

Finally, the district court refused Triton's invitation to import from the preferred embodiment into the claims a limitation that the claimed "input device" be limited to devices that are "responsive to human manipulation." [A-009.]

## SUMMARY OF ARGUMENT

1.     This Court should affirm the district court's ruling that the asserted claims are indefinite because the specification describes no corresponding structure for the claimed "integrator means" and "processing means."

– 13 –

"The point of the requirement [in 35 U.S.C. § 112 ¶ 6] that the patentee disclose particular structure in the specification and that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). Triton's positions in this case cannot be reconciled with this black-letter law. Rather, Triton improperly seeks to use means-plus-function language to cover any means for performing the recited function: its argument is that the means-plus-function limitations here cover *any* structure within the grasp of an ordinary skilled artisan — disclosed or not. That is wrong as a matter of law and contrary to the fundamental purpose of section 112 paragraph 6. As in *Aristocrat*, Triton "has not paid the price but is attempting to claim in functional terms unbounded by any reference to structure in the specification." *Id.*

Sensing the problem with that argument, Triton also raises a new argument (never made in the district court) that the specification teaches an algorithm for performing the functions of the claimed integrator and processor means. But the cited disclosure regurgitates the claimed functions without disclosing an algorithm at all. Thus, even if Triton is permitted to reverse course at the last minute, its new argument fares no better than its old one.

2.     Because all the asserted claims require an "integrator means," all the asserted claims are invalid for indefiniteness, and this Court need not reach the

– 14 –

other two issues that Triton raises on appeal. Nevertheless, if this Court reaches the issue, it should also reject Triton's assertion that the claimed "communication means" includes any "uni-directional or bi-directional wireless interface" or "cable." As a practical matter, Triton's proposed construction would cover any wired or wireless communication because the construction places no limits on the structure for performing the claimed function. Again, such functional claiming is improper and must be rejected. Instead, as the district court held, the claimed "communication means" must be limited to the structure actually disclosed for performing the claimed function — six interface ports or a cable — and equivalents thereof.

3.    If the Court reaches Triton's final issue, it should also affirm the district court's refusal to limit the claimed "input device" to the patent's preferred embodiments: devices "responsive to human manipulation." Nothing in the phrase "input device" imposes a human-manipulation requirement, and nothing in the specification or prosecution history imposes such a limitation, either. This is a textbook case of a patentee improperly trying to limit a claim limitation to its preferred embodiment in an attempt to avoid invalidity over prior art.

# ARGUMENT

## I. The district court properly declared the "integrator means" and "processing means" limitations indefinite because the specification failed to disclose sufficient corresponding structure

Triton's arguments that the claimed "integrator means" and "processing means" are sufficiently definite fail for two fundamental reasons. First, a means-plus-function limitation is indefinite if the specification merely identifies a general-purpose processor as corresponding structure without disclosing an algorithm that the processor is programmed to perform — regardless of whether such an algorithm would be obvious to a skilled artisan. Second, Triton's claim to have found a viable algorithm in the patent specification comes too late and fails on the merits in any event. This Court should therefore affirm the district court's determination that the claims are invalid for indefiniteness.

### A. A means-plus-function limitation is indefinite if the disclosed structure to perform the claimed function is merely a general-purpose processor, without further disclosure of an algorithm that the processor will perform

Triton and Nintendo agree that the structure disclosed in the '181 patent for the integrator means and the processing means is a general-purpose processor. Where the parties disagree is on whether the patent also must disclose an algorithm for the processor to perform. As a matter of law, the answer is "yes."

This Court has repeatedly recognized that it is not sufficient to identify a general-purpose processor as the structure corresponding to a means-plus-function

limitation; the specification must also identify an algorithm for the processor to use to perform the function. *Aristocrat*, 521 F.3d at 1338; *see also Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009); *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1367 (Fed. Cir. 2008). By definition, an algorithm is "'a step-by-step procedure for accomplishing a given result.'" *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) (citation omitted). Thus, if the specification does not disclose a particular step-by-step procedure, the means-plus-function limitation is indefinite and all claims including it are invalid. *Aristocrat*, 521 F.3d at 1338; *Blackboard*, 574 F.3d at 1385-86; *Net MoneyIN*, 545 F.3d at 1367.

These well-established legal principles dispose of this case. The '181 patent's specification lacks an algorithm for performing the function of the "integrator" or "processor" means, so the claims are indefinite. Triton's arguments to the contrary cannot withstand established law of this Court and depend on ignoring or stretching the facts regarding the disclosure of the patent-in-suit.

### 1.    The knowledge of a person of ordinary skill does not remedy the failure to disclose an algorithm

Triton's argument (at 12-13) that the "structure for 'integrator means' and 'processing means' were well known in the art" does not excuse the '181 patent's failure to disclose an algorithm for performing the claimed functions. Whether, as

Triton asserts (at 12-13) "numerical integration ... is something that ... a [person of ordinary skill in the art] would handily accomplish" misses the point. In *Aristocrat*, this Court soundly rejected the patentee's attempt to use the knowledge of a person of ordinary skill in the art to supply the disclosure that the specification itself failed to supply, recognizing a critical distinction between the enablement requirement of section 112 paragraph 1 and the requirement to disclose corresponding structure in section 112 paragraph 6. 521 F.3d at 1336.

Just like Triton, the patentee in *Aristocrat* argued that "devising an algorithm to perform that function would be within the capability of one of skill in the art, and therefore it was not necessary for the patent to designate any particular algorithm to perform the claimed function." *Id.* at 1334. This Court recognized that unlike the enablement requirement, which serves to enable others to practice the claimed invention, "[a] section 112 paragraph 6 disclosure … serves the very different purpose of limiting the scope of the claim to the particular structure disclosed, together with equivalents." *Id.* at 1336. It is now "well established that proving that a person of ordinary skill *could* devise some method to perform the function is not the proper inquiry as to definiteness—that inquiry goes to enablement." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1319 (Fed. Cir. 2013).

Triton relies (at 12-14) on *Typhoon Touch Technologies, Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011), for the proposition that no disclosure of corresponding structure is necessary if one skilled in the art "would handily accomplish" the claimed means-plus-function limitations because of the "subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field." But *Typhoon*, *Aristocrat* and this Court's more recent cases all follow the same rule: a means-plus-function claim is indefinite if the structure provided is a general-purpose processor without a sufficiently disclosed algorithm for that processor to perform. *See Typhoon*, 659 F.3d at 1385-86. Contrary to Triton's suggestion, *Typhoon* did not purport to eliminate the requirement of an algorithm. Instead, the Court confirmed that requirement but found that the specifications of those patents recited an algorithm, including "the steps of data entry, then storage of data in memory, then the search in a library of responses, then the determination if a match exists, and then reporting action if a match is found." *Id.* at 1386.

This Court has repeatedly rejected similar efforts to misread *Typhoon* and undermine the requirement to disclose algorithmic structure. *See*, *e.g.*, *Ibormeith IP, LLC v. Mercedes-Benz USA, LLC,* No. 2013-1007, slip op. at 12 (Fed. Cir. Oct. 22, 2013) (rejecting analogy to *Typhoon* because the specification at issue did not recite algorithmic steps); *Ergo Licensing*, 673 F.3d at 1365 (rejecting argument

– 19 –

that *Typhoon* supported patentee's definiteness argument because "'an algorithm is still a step-by-step procedure for accomplishing a given result'") (citation omitted); *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519-20 (Fed. Cir. 2012) ("[*Typhoon*'s] holding has no application here: The problem here is not the adequacy of the substance or form of the disclosure, but the absence of any disclosure at all."); *Function Media*, 708 F.3d at 1319 (similarly distinguishing *Typhoon*). It should do the same here.

The portions of *Typhoon* on which Triton relies merely stand for the proposition that the disclosure of an algorithm is viewed from the perspective of one skilled in the art. 659 F.3d at 1385 ("[T]he amount of detail [about a disclosed algorithm] that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention."). What *Aristocrat* said remains true: "[i]t is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function"; "[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing that structure." 521 F.3d at 1337 (quoting *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007)).

Triton's assertion that no algorithm is necessary because the claimed limitations are enabled has no basis in law, and the "integrator means" and "processing means" limitations are indefinite due to the '181 patent's failure to disclose any actual algorithm for performing the claimed functions.

### 2. The obviousness of a means-plus-function limitation does not remedy the failure to disclose an algorithm

Triton also argues (at 12-13, 16-17) that disclosure of an algorithm is unnecessary because "integrator means" and "processing means" were obvious to one skilled in the art. But whether those limitations "would have been obvious" under 35 U.S.C. § 103 is irrelevant. The critical issue here is whether the patent satisfies the requirements of *section 112*. *See Function Media,* 708 F.3d at 1319 (explaining that "proving that a person of ordinary skill *could* devise some method to perform the function is not the proper inquiry as to definiteness"); *cf. Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1352 (Fed. Cir. 2011) ("[W]ritten description and obviousness are distinct legal doctrines."). As such, "'[t]he inquiry is whether one of skill in the art would understand the specification itself to disclose a structure,'" *Aristocrat*, 521 F.3d at 1337 (quoting *Biomedino*, 490 F.3d at 953), not whether such a structure would have been obvious to one skilled in the art.

In arguing that algorithms for the limitations at issue were obvious and known, Triton points (at 12-14) to statements made by the examiner during prosecution of the '181 patent. But even if Triton's characterization of the prosecution history were accurate, it is irrelevant. The question is not whether a person of skill in the art *could* program a microprocessor to perform numerical integration. Rather, the question is whether Triton's specification disclosed, and via section 112 paragraph 6 claimed, a particular algorithm for performing that function. There are indeed numerous ways to program a microprocessor to perform numerical integration. A skilled artisan might think some of these approaches are simple while others are elegant and interesting. But that does not matter. The specification, not the imagination of a skilled artisan, needs to be the relevant source. Triton's asserted claims are invalid.

In short, under section 112 paragraph 6, Triton may only *claim* particular ways that were disclosed in the specification — and none were. Triton's discussion about what the examiner did or did not think is irrelevant because section 112 paragraph 6 requires disclosure in the specification itself.

### B.    The '181 patent does not disclose an algorithm to perform the claimed functions

Because the law requiring disclosure of a particular algorithm is so well settled, Triton further argues — for the first time in the case — that the '181 patent

discloses an algorithm for performing the claimed functions. As a threshold matter, Triton waived this argument by failing to pursue it in the district court. *See Energy Transp. Grp., Inc. v. William Demant Holding A/S,* 697 F.3d 1342, 1357 (Fed. Cir. 2012) ("This court will not consider arguments raised for the first time on appeal."), *cert. denied*, 133 S. Ct. 2010 (2013); *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420,1426 (Fed. Cir. 1997) ("[T]his court does not 'review' that which was not presented to the district court."). In any event, even if this Court considers Triton's newfound argument, the portions of the patent that Triton relies on do not disclose an algorithm for performing the claimed functions.

### 1.    The '181 patent does not disclose an algorithm to perform the function of the "integrator means"

The parties agree that the function of the claimed "integrator means" is "integrating said acceleration signals over time to produce velocity signals for linear translation along each of said first, second and third axes" (for claim 4) and "integrating said acceleration signals over time to produce velocity signals for linear translation along each of said first, second and third axes, and for integrating said rotation signals and said linear translation velocity signals over time to produce position and attitude values" (for claim 19).

Triton attempts (at 17-22) to stitch together unsupported attorney argument and irrelevant portions of the specification of the '181 patent in an effort to fashion

an algorithm to perform the claimed functions. But the cited portions of the specification are either unrelated to the claimed "integrator means" or do no more than repeat the claimed function without disclosing an algorithm for performing the function.

As an initial matter, Triton's framework for "numerical integration" (at 17-19), styled as a "primer," is rank unsupported attorney argument. The unsupported argument continues when Triton contends (at 19) that "integration is comprised of two steps: (1) Sampling and (2) Accumulating" without any citation to where this fact is disclosed in the specification or anywhere else. Simply put, although Triton's *brief* provides this Court an allegedly detailed description of "numerical integration," including a demonstrative graphic, Triton's *patent* (and the record below) contain no such disclosure.

What is more, the portions of the specification that Triton cites as implementations of the "Sampling" and "Accumulating" steps do not, in fact, disclose an algorithm for the "integrator means." Triton tries to invent such steps by identifying portions of the '181 patent that relate to *other* claim limitations or that simply repeat the claimed function of the "integrator means." In particular, Triton asserts (at 19-20) that the '181 patent discloses an algorithm "comprised of two steps" ("sampling" and "accumulating") for performing the function of the "integrator means." Triton then identifies portions of the specification that

– 24 –

supposedly disclose each of these alleged steps. But the first step, "sampling," relates to a different claim limitation and cannot be part of an algorithm corresponding to the "integrator means." And, the second step, "accumulating," simply refers to the function of the "integrator means."

The alleged step of "sampling" cannot be part of any algorithm for the "integrator means" because it corresponds to different claim limitations. Triton claims (at 20, citing '181(9:28-37)) that this "sampling" step was disclosed in the '181 patent's statement that the "***sensor outputs are periodically sampled*** and quantized [and] the quantized signals ... [are] ***stored for further processing***" (emphasis added by Triton). Triton concludes (at 21) that the "specification more than adequately describes the process a [person of ordinary skill in the art] would have known to have undertaken with respect to the Sampling Step." But the alleged "Sampling Step" is recited in *other* claim limitations and thus cannot be a step for performing the function of the claimed "integrator means." In particular, claims 4 and 19 recite:

> an analog-to-digital converter associated with said input device which quantizes said analog acceleration sensor signals to produce digital acceleration sensor values; [and]

> a first-in, first-out buffer memory which temporarily stores said digital acceleration sensor values from said analog-to-digital converter in sequential order for later processing ....

These two claim limitations directly correspond to the patent's statement that "sensor outputs are periodically sampled and quantized [and] the quantized signals ... [are] stored for further processing." ['181(9:32-37).] The patent's description of a "sampling step" thus cannot serve as disclosure of the separately recited step for performing the function of the claimed "integrator means."

For its part, the alleged "accumulating" step merely repeats the claimed function for the "integrator means" without disclosing an algorithm for performing that function. Triton spends ten pages (14-23) of its brief trying to identify a disclosure of an algorithm for performing the function of the "integrator means." In reality, however, Triton continues to assert that the "integrator means" limitation is not limited to any purportedly disclosed algorithm and that the structure for performing the function of the "integrator means" is a conventional processor. Triton is forced to make this assertion because it cannot point to any actual algorithm corresponding to the claimed function. Indeed, the allegedly disclosed algorithm is simply a black box that indicates that that function is performed. There is no disclosure of *how* that function is performed.

The '181 patent's sole disclosure of structure for performing the claimed integration function is a "conventional microprocessor with suitable programming that performs integration or a suitably programmed digital signal processor." Specifically, the specification recites that "[t]he processing element 34 is

preferably a conventional microprocessor having a suitably programmed read-only memory. The processing element 34 may also be a suitably programmed conventional digital signal processor." ['181(7:15-19).] The patent further states that "the processing element 34 periodically reads and numerically integrates the digitized sensor signals from the FIFO buffer memory 33. Three-dimensional motion, position and attitude values are *continually computed in a known manner* based on the most recent results of the numerical integration of the sensor data, the current zero position and attitude information, and the current processing configuration established by push-button or computer commands." ['181(7:19-27) (emphasis added).] Despite Triton's attempt to glorify them, these portions of the specification merely state that a conventional microprocessor or similar digital signal processor performs the claimed function in a known manner, without disclosing any algorithm for performing the claimed function.

Triton also cites the description of item 3.1 in Figure 7. But there again, the patent merely recites that "numerical integration" *will occur*, without disclosing any algorithmic steps that the processor will use to accomplish that numerical integration:

> *Process 3.1 numerically integrates* over time the instantaneous rotational velocity values for each of the X, Y and Z axes, resulting in a rotational displacement value for each axis, representing the motion sensing assembly attitude. ... *Process 3.1 then numerically integrates* in a

– 27 –

> conventional manner these compensated translational
> acceleration values for each of the X, Y, and Z axes to
> produce a translational velocity value for each of the
> three dimensions. In the embodiment of FIGS. 3 and 4,
> *these functions are implemented by the processing
> element 34* which, as previously noted, reads the sensor
> values from the buffer memory 33 for further processing.

['181(9:55-10:15) (emphasis added).]

The testimony of the patent's named inventor, Brian Glynn, confirmed that

the specification only disclosed the use of "numerical integration", not an

algorithm for numerical integration. During his deposition, Glynn agreed that the

'181 patent did not disclose any algorithm for "numerical integration":

> Q.    Does your patent [the '181 Patent] -- does your
> patent disclose any methods for performing numerical
> integration?
>
> A.    It does not.
>
> [Triton's counsel]: Object as to form.
>
> THE WITNESS: I'm sorry. *I do not disclose [a]
> method of integration. I assumed it was sufficient to say I
> was doing numerical integration.*

[JA1072 (Glynn Dep. Tr. 152:6-12) (emphasis added).] Triton cannot run away

from that testimony now.

Triton also points (at 21-22) to portions of the '181 patent that recite that the

integration results can be "reset to zero" so that the "integrator means" starts over.

But these passages still provide no insight about the algorithm used to perform the

function of the integrator means. Rather, they say that function of the claimed "integrator means" can be performed again starting at zero without stating *how*. That is not enough.

Triton next suggests (at 22) that portions of the '181 patent disclose values that are "continually computed in a known manner" and that "[n]umerical integration is performed continually on the digital acceleration and rotational rate values provided by the sensors." But again, these portions of the specification do not disclose *what algorithm* is "continually computed" or "performed continuously" in a known manner as this Court's case law demands.

Triton concludes (at 22) that one skilled in the art would understand that "known manner" to perform the function of the "integrator means," and says that "the Examiner acknowledged this." But as the district court concluded, "[a]lthough a person of skill in the art might be able to choose an appropriate numerical integration algorithm and program it onto a microprocessor, the Patent discloses no algorithm at all." [A-018.] As discussed above, the specification, not the imagination or experiences of the skilled artisan, must provide the algorithm.

Once again, Triton ignores that this Court has rejected similar arguments in several cases. In *Aristocrat*, the Court found that the patent "has disclosed, at most, pictorial and mathematical ways of describing the claimed function of the game control means" and concluded that "[t]hat is not enough to transform the disclosure

of a general-purpose microprocessor into the disclosure of sufficient structure to satisfy section 112 paragraph 6." 521 F.3d at 1335. Similarly in *Blackboard*, the patentee asserted that the disclosure of an "access control manager" provided sufficient structure for the limitation "means for assigning." 574 F.3d at 1382. But this Court explained that the access control manager "is simply an abstraction that describes the function of controlling access to course materials, which is performed by some undefined component of the system." *Id.* at 1383. As such, "[t]he [access control manager] is essentially a black box that performs a recited function," which was not enough to satisfy the requirements of section 112 paragraph 6. *Id.*

In sum, Triton's disclosure simply rewords or describes the claimed function of the "integrator means." Allowing that disclosure to constitute a structure for the limitations would enable Triton to claim any algorithm for performing the claimed function, contrary to settled law.

## 2.    The '181 patent does not disclose an algorithm to perform the function of the "processing means"

As Triton notes (at 23), the "processing means" of claim 13 requires compensating for gravity. As the district court found, however, the '181 patent does not disclose how to perform that claimed function. [A-018.] Triton points (at 23-25) to item 3.1 of Figure 7 as disclosing an algorithm for the function of the "processing means." But although a part of atomic item 3.1 of Figure 7 is labeled

"Compensation for Gravity" [*see* JA007], the patent's description of this item does not provide any step-by-step process for compensating for gravity; instead it simply recites that such compensation will be computed somehow. [*See* '181(9:59-61) ("Process 3.1 uses this attitude information to compensate for the gravitational effect of the earth on the translational acceleration sensors."); '181(10:3-7) ("Based on the computed attitude of the sensors, process 3.1 will compute and compensate for that portion of acceleration detected by each translational acceleration sensor which is attributable to the force of gravity.").] Once again, the specification provides little more than a black box.

Triton falls back (at 25) on the assertion that "a skilled artisan could accomplish the gravitational compensation done by the 'processing means.'" But that argument is irrelevant for the same reasons set forth above: the question here is not enablement or obviousness, but whether the applicant has disclosed corresponding structure as required under section 112 paragraph 6 in order to avoid invalidity for indefiniteness. And in this case, the applicant plainly did not.

## II.   The district court properly limited "communication means" to the corresponding structures disclosed in the specification

If this Court agrees that the claimed "integration means" is indefinite, it can stop there and need not proceed to decide whether the district court correctly construed other terms of the patent. After all, if any limitation of a claim is

indefinite, the entire claim must be declared indefinite and invalid. Nevertheless, if the Court reaches the "communication means" issue, it should affirm the district court's finding regarding the corresponding structure disclosed in the '181 patent's specification.

Claims 4 and 19 recite a "communication means associated with said input device for communicating information between said input device and said computing device." ['181(13:13-15, 14:59-61).] The parties agree that the "communication means" is a means-plus-function limitation subject to section 112 paragraph 6. The parties also agree that the function of the "communication means" is "communicating information between said input device and said computing device." The parties further agree that part of the corresponding structure for performing the claimed function includes a cable. The parties disagree, however, about whether the '181 patent described any other structure for performing that claimed function.

Triton's proposed additional corresponding structure for the "communication means" ("uni-directional or bi-directional wireless interfaces") would impose no limitation whatsoever on the structure for performing the claimed function. In effect, the "communication means" would include any wireless or wired means for communicating, which would in turn cover any structure that performs the claimed function. As set forth above, such purely functional claiming

is prohibited as a matter of law. Instead, the corresponding structure must be limited to the actual structure disclosed in the '181 patent — namely, six interface ports or a cable.

The only wireless structure disclosed for performing the function of the claimed "communication means" is the plurality of interface ports 7-12 (ports 7, 9 and 11 shown in Figure 1(d) at right). As shown in Figure 1(d), each external face of the mouse includes an interface port. The specification expressly connects these interface ports to the claimed function: "Each of these *interface ports may provide communication with the computer* through known wireless communication techniques, such as infrared or radio techniques." ['181(5:8-11) (emphasis added).]



FIG. 1(d)

Triton improperly tries to expand the scope of "communication means" to any structure that provides a "wireless interface," but the phrase "wireless interface" conveys no structure corresponding to the "communication means." Describing Figure 3, the patent discloses a "wireless interface 21 between the mouse



FIG. 3

transceivers 7-12 [i.e., the interface ports] and a transceiver 22 associated with a computer 23." ['181(6:35-37).] But as shown in Figure 3 itself (above), the "wireless interface 21" is simply the *signal* between the input device and the computer. The term "wireless interface" conveys no *structure*. In fact, Figure 3 depicts the actual "communication means" structure by calling out all six ports (items 7 through 12) as the structure providing the wireless interface 21.

To be sure, the description of the six interface ports refers to "known wireless communication techniques" ['181(5:9-10)], but this Court routinely rejects constructions like Triton's that rely on the disclosure of "known" techniques to satisfy the structure of a means-plus-function claim limitation. In *Biomedino,* for instance, this Court held that the specification's recitation of

"known" equipment for performing a claimed function was insufficient disclosure of structure corresponding to the function recited in the claim language. 490 F.3d at 949-53 (finding the means-plus-function limitation indefinite). Similarly here, the '181 patent's disclosure of "known wireless communication techniques" is insufficient structure for the "communication means" limitation because "known wireless communication techniques" conveys no specific structure at all.

Notably, the patent asserted that its use of the six-port structure was an improvement because, according to the specification, the prior art "constrain[ed] the use of the remote device to a limited range of orientation with respect to the computer in order to permit proper communication." ['181(2:39-42).] This problem was allegedly solved by either having a wired interface or having "at least one of the interface ports generally fac[ing] the computer at all times." ['181(5:16-18).] The only disclosed structure that allows such wireless communication was the six-port structure. Triton cannot ignore the claimed solution and broaden the scope of the claims to include all wireless communication devices.

In sum, the district court properly construed the "communication means" as "the six interface ports, or a single cable, or their equivalents." [A-016.]

**III.    The district court properly refused to import a "responsive to human manipulation" limitation into the general term "input device"**

Finally, Triton asks the Court to restrict "input device" to the '181 patent's preferred embodiments — devices "responsive to human manipulation." Again, this Court need not reach the issue if it affirms that the claims are indefinite. But again, if the Court does reach the issue, it should affirm because the district court was correct in refusing to import a limitation from the specification into the claims.

Triton seeks to limit "input devices" to devices that are "responsive to human manipulation" in an effort to avoid prior art input devices that were not human-manipulated. But nothing in the claim language, the specification, or the prosecution history mandates the additional limitation that Triton tries to impose.

The preambles to claims 4 and 19 recite "[a]n input device for providing information to a computing device, comprising." ['181(12:42-43, 14:13-14).] The remainder of the claims describe the input device's components. Even assuming that the preambles are limiting, nothing in the preambles or the rest of the claim language requires or even implies that the input device must be limited to input devices that are "responsive to human manipulation."

To be sure, the specification describes mice and other exemplary human-manipulated input devices. But nowhere did it say that the invention was *limited* to human-manipulated input devices. Moreover, the specification shows that the

applicant knew how to describe an input device that is "responsive to human manipulation." When he meant an input device that was responsive to human manipulation, he said so, reciting "a hand-held computer input device" [']181(5:4-5)] or "an apparatus and method for providing input ... by the natural motion of a person" [']181(2:63-66)]. Yet his claims recited an "input device" without any additional limitation. Nothing in the prosecution history purported to limit the claimed "input devices" to human-manipulated input devices, either.

As the district court recognized, "embodiments, even preferred embodiments, do not limit claims." [A-009 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc), and *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007)).] Triton counters (at 30) that the Court "must also attempt to construe a term such that it is valid." But as the Supreme Court long ago instructed, courts may not read a limitation from the specification into a claim to save the claim from invalidity:

> [W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement. The difficulty is that, if we once begin to include elements not mentioned in the claim, in order to limit such claim ... we should never know where to stop.

*McCarty v. Lehigh Val. R. Co.*, 160 U.S. 110, 116 (1895); *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 336 U.S. 271, 277 (1949) ("When they [over-

claim] to the point of invalidity and are free from ambiguity which might justify resort to the specifications, we agree with the District Court that they are not to be saved because the [specifications] are less inclusive."), *adhered to on reh'g*, 339 U.S. 605 (1950).

In arguing that the broadly claimed "input device" would not be enabled if it is not limited to devices responsive to human manipulation, Triton criticizes the district court (at 29) for not applying the same analysis for the "input device" limitation that it did for the "communication means" limitation. What Triton fails to recognize, however, is that the term "communication means" is limited by statute to structures expressly disclosed in the '181 patent for performing the claimed function. There is no such limitation for the term "input device," which is not written in means-plus-function format and thus not governed by section 112 paragraph 6. The district court properly held that the '181 patent "does not limit the 'input device' to those that are 'responsive to human manipulation.'" [A-009.]

## CONCLUSION

The district court's judgment and underlying rulings should be affirmed.

Respectfully submitted,

PERKINS COIE LLP

by /s/Grant Kinsel
    Grant Kinsel

Attorneys for Nintendo of America Inc.

### CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 8,073 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word 2010 and 14-point Times New Roman type.

Dated: December 9, 2013                    /s/Grant Kinsel
                                           Grant Kinsel

## PROOF OF SERVICE

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, I certify that I caused the foregoing to be served via the Court's CM/ECF system on counsel of record for the appellant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: December 9, 2013, at Seattle, Washington.

_____/s/ Grant Kinsel_____
Grant Kinsel
